UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Nicole Holder** | ) | **CASE NO. 1:06-cv-1697** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **City of Cleveland** | ) | **Memorandum Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

Plaintiff Nicole Holder's Complaint alleges that the City of Cleveland discriminated against her on the basis of race. Defendant City of Cleveland has filed a motion for summary judgment as to Plaintiff's claims. (Doc. 10). For the reasons that follow, the City of Cleveland's motion is GRANTED.

**DISCUSSION**

Plaintiff Nicole Holder is an African American female who worked for Defendant for a number of years. At issue here is her employment with the City of Cleveland Water Division ("CWD"). Prior to starting with CWD Plaintiff was employed as a Public Information Officer with an initial salary of $28,322 that eventually reached $30,750. Budget constraints resulted in

1

layoffs within the City government, but as part of a city-sponsored job fair Plaintiff received a job with CWD in late 2003 at a salary of $40,000.  She was assigned the position of Project Director.  By April 2004, Plaintiff applied for and received a position within the City Office of Equal Opportunity ("OEO") at a salary of $48,000.  In August 2004, her supervisor at OEO asked to extend her probation period, and Plaintiff sought to return to her former position at CWD.  CWD hired her back at her previous salary of $40,000.

Plaintiff worked within the Training Unit of Project Directors.  Her main job was training for the City's new Automatic Data Processing ("ADP") system.  Plaintiff claims that she was promised in December 2004 that if she took on the ADP project she would receive a pay raise.  She did not receive the raise despite a July 11, 2005 memo from her supervisor recommending that she receive a raise.  On July 15 she stated that she no longer wished to work on ADP as a result of CWD's failure to keep the December 2004 agreement to raise her pay.  Plaintiff thereafter refused to perform ADP projects and on July 28 received a written reprimand for neglect of duty and insubordination.  On August 10 Plaintiff sent an e-mail to superiors that she was "constantly being berated with questions to resolve your ADP problems" and repeating her allegations that the city had reneged on its promise to raise her salary.  That same day she walked out of a meeting where her supervisor attempted to assign her with ADP-related projects.  This resulted in a pre-disciplinary notification letter which set a scheduled hearing date of August 15, 2005.  Plaintiff responded that she would not attend the hearing due to lack of notice and resigned on August 19, 2005.

On October 12, 2005, less than two months after her resignation, Plaintiff filed a complaint in the Northern District of Ohio.  No. 05-cv-2402 ("*Holder I*").  The Complaint

alleged a claim under the Equal Pay Act because the City allegedly paid "Plaintiff a salary substantially lower than the salary paid other employees of different races, ages and genders with identical job titles." She also stated a common law contract claim based on the alleged promise to raise her salary for working on the ADP project. The parties consented to have the case heard by Magistrate Judge Perelman, who set a pretrial conference for March 6, 2006.

On January 11, 2006, plaintiff filed an EEOC complaint alleging race and sex discrimination in violation of Title VII of the Civil Rights Act. The pretrial conference was held in *Holder I* in which the Court extended the discovery deadline to May 26, 2006. Plaintiff then received her right to sue letter on the Title VII claim on April 25, 2006. At the next *Holder I* pretrial, held on May 22, 2006, the Court set a dispositive motion deadline for the end of July, which was later extended to August 18, 2006.

On July 14, 2006, prior to the dispositive motion deadline in *Holder I* , Plaintiff filed this Complaint alleging violations of 42 U.S.C. § 1981, Title VII discrimination and violations of the Ohio Equal Pay Act. All of her claims are premised on the idea that CWD paid racially unequal salaries. Specifically, while she was paid $40,000 white female employees in the her department with the same job title were paid $50,000 and $55,167.

The City filed a motion for summary judgment in *Holder I* on August 18, 2006. Because a federal Equal pay Act claim does not apply to race and age claims, both the parties and the *Holder I* Court treated the claim as solely a gender claim based on disparate wages. The *Holder I* Court granted summary judgment for the City because the only male employee was part time, there was a lack of proof that he held a similar job, and the male employee had nearly 30 years more experience than Plaintiff. Judgment was entered on November 27, 2006.

The City of Cleveland points to this judgment and argues that Plaintiff's claims are barred by res judicata. Because *Holder I* was also filed in federal court, federal res judicata principles apply. *J.Z.G. Resources v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). The Sixth Circuit has set out the following four-part test for res judicata:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Rawe*, 462 F.3d at 528.

The first two elements of res judicata are clearly met. The parties are the same and judgment has been entered in *Holder I*. With respect to the third element, courts refer to instances where an issue "was litigated" as issue preclusion and instances where an issue "should have been litigated' as claim preclusion. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). At issue here is claim preclusion. Finally, "[i]dentity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Mitchell v. Chapman*, 343 F.3d 811, 819 n.6 (6th Cir. 2003); *Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 484 (6th Cir. 1992).

Plaintiff first argues that the race claims stated here could not have been litigated in *Holder I*. She notes that she did not receive her right to sue letter from the EEOC on her race claims until after *Holder I* was already pending. By the time the right to sue letter issued the time had passed for her to amend her complaint as of right. Her attorney states in the text of the

4

opposition brief that the City attorney threatened to oppose a motion to amend, and further states that "Plaintiff could have been denied due to filing a motion to amend long after the initial complaint was filed."

As the City points out, the Sixth Circuit has considered and rejected such arguments.  In *Heyliger v. State Univ. & Comm. College Sys. of Tenn.*, the plaintiff was a native of the former British Guyana who was terminated from his position as a professor at East Tennessee State University.  126 F.3d 849, 851 (6th Cir. 1997).  He filed a complaint with the EEOC in September 1990 alleging violations of Title VII and a state court action in December 1990 based on the Tennessee Human Rights Act.  The state court granted the defendants' motion for summary judgment in November 1993 and the EEOC provided a right to sue letter in January 1994.  The plaintiff then filed a Title VII claim in federal court which the district court dismissed on res judicata grounds.  *Id*.

The Sixth Circuit agreed that res judicata applied even though the plaintiff received his right-to-sue letter *after* the state court entered judgment.  *Id*. at 856.  The Sixth Circuit found it sufficient that the plaintiff *could* have received his right to sue letter during the pendency of the state court action.  *Id.* at 855.  Assuming the plaintiff had taken the necessary steps to receive the right-to-sue letter, he "could have folded his Title VII claim into his action in state court, for, under Tennessee law, 'leave [to amend pleadings] shall be freely given when justice so requires.'" *Id*. at 856 (quoting Tenn. R. Civ. P. 15.0).

Although *Heyliger* was decided under Tennessee preclusion law, the Court has no reason to believe that the Sixth Circuit would reach a different conclusion under federal law.[1]  *See*

---

[1]   Plaintiff has not identified and the Court does not perceive any
      reason that federal law would not require a timely right to sue

5

*Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032-33 (6th Cir. 1998) (applying *Heyliger* to subsequent federal lawsuits). Indeed, federal courts throughout the country have accepted the reasoning of *Heyliger*.[2] *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 715 (9th Cir. 2001); *Jang v. United Techs. Corp*, 206 F.3d 1147, 1148 (11th Cir. 2000); *Churchill v. Star Enters.*, 183 F.3d 184, 193 (3d Cir. 1999); *Robinson v. Dist. of Columbia*, No. 99-1694, 2000 U.S. Dist. LEXIS 14476, *9 (D.D.C. Sept. 30, 2006).

*Heyliger* also holds plaintiffs to a minimal standard of care in managing their lawsuits. 126 F.3d at 856; *see also Donald v. Frugal I, Inc.*, No. 02-5058, 74 Fed. Appx. 593, 597 (6th Cir. Sept. 9, 2003) (holding that the plaintiffs "should have made an effort . . . to bring all of their claims in one venue"); *Owens*, 244 F.3d at 715 (finding that the plaintiffs had ample time to exercise their procedural options); *Robinson*, 2000 U.S. Dist. LEXIS 14476, *9 (noting that "this sequence was not inevitable" and noting procedural options the plaintiff failed to utilize); *Dowdell v. Univ. of Medicine & Dentistry of N.J.*, 94 F. Supp. 2d 527, 539 (D.N.J. 2000) ("Had [plaintiff] undertaken these simple measures, requiring only due diligence on his part, his Title VII claims could have been added to his NJLAD claims without difficulty.").

Whereas the *Heyliger* plaintiff did not receive his EEOC right-to-sue letter until after judgment in the state action, Plaintiff received her right-to-sue letter a month before the close of

---

letter and motion to amend where state law does. Moreover, the Federal Rules of Civil Procedure similarly provide that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

[2] Plaintiff's states that she "is not aware of any case law that mandates the filing of a motion to amend." However, as the cited cases demonstrate, she cannot blame her lack of awareness on a dearth of caselaw on the subject.

6

discovery.  The *Holder I* Court had been willing to extend deadlines and even extended the dispositive motion deadline at a conference held nearly a month after plaintiff received her right-to-sue letter.  Moreover, Plaintiff filed *Holder I* in federal court less than two months after her resignation despite the fact that Equal Pay Act claims have a 3 year statute of limitations.  *See* 29 U.S.C. § 255(a); *Gandy v. Sullivan County*, *Tenn.*, 24 F.3d 861, 863 (6th Cir. 1994).  She waited another 3 months to file her EEOC complaint despite the fact that a right-to-sue letter is a prerequisite to filing in federal court.  Although the possibility that Defendant might oppose a motion to amend apparently caused Plaintiff great consternation, the need to file the motion was entirely due to Plaintiff's own litigation strategy.  Accordingly, the Court concludes that Plaintiff's EEOC complaint does not avoid the res judicata consequences of *Holder I*.[3]

Plaintiff next argues that she did not seek to amend because:

> Defendant could have argued that Plaintiff was attempting to add new legal claims and new facts previously known.  In short, filing a motion to amend -- especially after Attorney Gibbons expressed his intent to oppose such a motion -- would have been a tactical error to the prejudice of Holder.

(Doc. 13 p.5).

Although not expressly stated in such terms, this is really an argument that the "identity of causes of action" element of res judicata is not met.  To the extent Plaintiff argues that new legal theories based on the same facts pulls those claims beyond the preclusive reach of *Holder I*, she is clearly mistaken.  *See Rivers*, 143 F.3d at 1032 (explaining that a final decision on the merits is final "not only as to those legal theories, but also as to any other legal theory under which that claim might have been litigated"); *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832

---

[3] The City correctly notes that the § 1981 and Ohio Equal Pay Act claims do not have an exhaustion requirement.  The EEOC right to sue letter could not excuse the failure to bring these claims.

(6th Cir. 1978) ("Where two successive suits seek recovery for the same injury a judgment on the merits operates as a bar to the later suit, even though a different theory of recovery is advanced in the second suit."). As the Court noted above, the issue is whether there exists an identity of facts and evidence between this case and *Holder I*. Moving to Plaintiff's "new facts" argument,[4] the only discernable difference between the facts of this claim and *Holder I* is that in her Complaint she specifically seeks to compare her pay to two particular white female employees and her claims are all race based. Otherwise the case at bar and *Holder I* involve the same employment, same supervisor and the same circumstances. *Compare Holder I* (alleging that plaintiff is an African American female with lower pay than other employees of similar or lesser performance and responsibility and that the city admitted the same), *with Holder II* (alleging that plaintiff is an African American female with lower pay than specific white females despite the City's admission that the unequal salaries were not due to skill, responsibility or seniority).

Plaintiff's new facts argument is simply incorrect. The *Holder I* Complaint specifically alleges that she was paid less than other Project Directors based on race: "Some of the Project Directors whose salaries exceeded Plaintiff's salary are of a different race and/or gender, even though Plaintiff's work responsibilities and work performance was equal to or exceeded that of the other Project Directors." *Holder I*, Comp. ¶ 19. Two paragraphs later the *Holder I* Complaint alleges that "Defendant knowingly violated the Equal Pay Act by paying Plaintiff a salary substantially lower than the salary paid other employees of different races, ages, and

---

[4] Beyond stating that "Plaintiff Holder's race-based complaint alleges different facts," Plaintiff does not venture to actually point out any specific facts.

8

genders with identical job titles." That Plaintiff chose to allege racial pay disparities without bringing a claim that allows for recovery for such claims is irrelevant to the res judicata analysis. *Cf., Godley v. Ameritech Corp.*, No. 97-4236, 1999 U.S. App. LEXIS 5983, *7 (6th Cir. Mar. 30, 1999) ("Plaintiff clearly should have brought his ERISA claim in his first suit. Why he did not do so remains a mystery . . . ."). Plaintiff alleged racially disparate pay in *Holder I* and those same facts are the basis for this claim.[5]

**CONCLUSION**

Accordingly, the City of Cleveland's motion is GRANTED.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 3/8/07

---

[5] Indeed, even if she failed to allege racial pay disparities in *Holder I* the res judicata bar would apply. The only difference between her sex claims and race claims is which co-workers she wishes to compare her pay against. Thus, the underlying facts remain the same. *See, e.g., Wilson v. Riggs Bank, N.A.,* No. 04-1005, 2005 U.S. Dist. LEXIS 6003, *13-16 (D.D.C. Apr. 3, 2005) (finding a race discrimination barred by previous claim of sex, personal appearance, parental responsibility and age discrimination that was based on same facts and same termination). That co-workers of another race have higher pay is really just another legal theory of recovery based on the same facts. To hold otherwise would open employers up to an endless litany of claims based on "newly discovered" pay discrepancies.